## THE LA NINFA.

## UNITED STATES *v.* THE LA NINFA.

### (*District Court, D. Alaska.* October 1, 1891.

SEAL FISHERIES—BERING SEA—FORFEITURE OF VESSEL.
  Where an American vessel on a whaling voyage has taken seal within the dominion of the United States, in Bering sea, she is subject to forfeiture, under Acts Cong. July 27, 1868, and March 2, 1889, and is not exempted by the fact that, after taking the seal, she is boarded by a United States revenue cutter, served with the president's proclamation, and warned to leave the seas, after which she makes no further attempts to take seal.

In Admiralty.

The vessel was libeled for a violation of section 1956, Rev. St. U. S. This section, as passed July 27, 1868, provided that "no person shall kill any * * * fur seal * * * within the limits of Alaska territory, or in the waters thereof, * * * and all vessels, their tackle, apparel, furniture, and cargo, found in violation of this section shall be forfeited." By an act approved March 2, 1889, the section above quoted was declared "to include and apply to all the dominion of the United States in the waters of Behring sea," and that it should be the duty of the president, at any timely season in each year, to issue his proclamation, and cause the same to be published, warning all persons against entering said waters for the purpose of violating the provisions of said section; and that he should cause one or more vessels of the United States to diligently cruise said waters, and arrest all persons and seize all vessels found to be or to have been engaged in any violation of the laws of the United States therein. 25 U. S. St. at Large, p. 1009. The proclamation above provided for was issued by the president on April 4, 1891. Id. p. 1565. On the 15th day of June, 1891, another proclamation was made by the president, reciting that an agreement had been made "between the government of the United States and the government of her Britannic majesty for *modus vivendi* in relation to the fur seal fisheries in Behring sea, for the purpose of avoiding irritating differences, and with a view to promote the friendly settlement of the question pending between the two governments touching their respective rights in Behring sea, and for the preservation of the seal species." By that agreement this government bound itself to the government of her Britannic majesty to prohibit seal killing until May, 1892, in that part of Bering sea lying eastward of the line of demarcation described in article No. 1 of the treaty of 1867 between the United States and Russia, and on the shores and islands thereof, the property of the United States, in excess of a certain number, and to promptly use its best efforts to insure the observance of this prohibition by United States citizens and vessels. The agreement further provided that "every vessel or person offending against this prohibition in the said waters of Behring sea outside of the ordinary territorial limits of the United States" might be

seized and detained by the naval or other duly-commissioned officers of either of the high contracting parties. The evidence shows that on July 7, 1891, the schooner La Ninfa was boarded in Bering sea, about 30 miles off St. Paul's island, by an officer of the United States steamer Thetis, under orders from the government to board all vessels in that sea, and, if they were engaged in sealing, to give them a copy of the proclamation of the president bearing date June 15, 1891, and a letter of warning to leave the sea at once. The La Ninfa had then on board 19 seals, some of which the captain stated to the boarding officer had been killed in Bering sea. The president's proclamation and letter of warning were delivered by the officer to the captain, and a memorandum to that effect indorsed upon the ship's papers by the officer. Afterwards, on July 14, 1891, two officers of the United States revenue cutter Corwin, acting under the same orders, boarded the La Ninfa in Bering sea, 10 miles or more from and north of St. Paul's island; and it being found that she had a sealing outfit of boats and guns, and 19 fur seals on board, some of which the captain admitted also to these officers had been caught in Bering sea, and that she had been previously warned, as above stated, to leave the sea, the vessel was seized. The log-book showed that 14 of the seals had been killed in Bering sea on July 6th, the day before the vessel was boarded by the Thetis, and the day after she sailed through Unimak pass, into the sea. It is not claimed that after that time any attempt was made to kill seals. The vessel had a complete whaling gear on board, and was bound on a whaling cruise.

*C. S. Johnson*, U. S. Dist. Atty.

*J. G. Heid*, for claimants.

BUGBEE, District Judge, (*orally.*) The only contention on the part of the claimant is that the La Ninfa was not liable to seizure or condemnation, because of the facts that after the delivery of the letter of warning and the president's proclamation there was no violation of the law, and that the vessel, being a whaler, had a right to remain in the sea. But it is very plain that the law was violated when fur seals were killed within the domain of the United States in the waters of Bering sea; that is, on July 6th, as shown by the log-book. The La Ninfa had an American register and an American owner. Whatever jurisdiction the United States may have over foreign vessels sealing in Bering sea, American bottoms are governed by the act of congress above cited. If the vessel had not been served with the warning and the president's proclamation she might still have been seized and was liable to condemnation. Indeed, it may be said that the president's proclamation cuts no figure in the case. It aimed at nothing except to proclaim the *modus vivendi.* It could not alter the law. The fact that after the violation of the law the vessel, instead of being seized at once, was warned to leave the sea, gave it no immunity from punishment after the actual seizure. The vessel is therefore declared forfeited.